427 So.2d 616 (1983)
Bo Harvey FIELD
v.
WINN DIXIE LOUISIANA, INC.
No. 82-CA-42.
Court of Appeal of Louisiana, Fifth Circuit.
February 7, 1983.
*617 William Bassett, Jr., River Ridge, for defendant-appellant.
Cummings & Gambel, Terry J. Marlowe, New Orleans, for plaintiff-appellee.
Before KLIEBERT, CURRAULT and DUFRESNE, JJ.
DUFRESNE, Judge.
This is a workmen's compensation case, in which Winn Dixie Louisiana, Inc. has appealed the judgment of the trial court awarding Bo Harvey Field $17,454.00 plus interest as past compensation, and awarding Field partial disability benefits from February 5, 1982, not to exceed two hundred seventy-six (276) weeks.
It was stipulated at trial that Bo Harvey Field (plaintiff) suffered an injury on October 6, 1978 while working in the course and scope of his employment as a warehouse laborer with the Winn-Dixie Louisiana Corporation (defendant). The plaintiff tripped and fell while filling orders at defendant's warehouse located in Harahan, Louisiana.
After the accident, plaintiff was initially seen at the emergency room of East Jefferson Hospital for complaints to a jammed left shoulder, acute sprain of the left elbow and acute cervical sprain. Three days later on October 9, 1978, plaintiff went to see Dr. Morris Levy where an examination disclosed similar findings. He subsequently received treatment for the same complaints from Dr. Randall Williams (orthopedic surgeon) and Dr. Kenneth Adatto.
In February of 1979, Dr. Robert L. Applebaum (neurosurgeon) undertook plaintiff's case and treatment. At this time, the complaint was constant pain in the left side of the neck and in the anterior part of the neck on the left side surrounding his left shoulder blade. On March 13, 1979, Dr. Applebaum recommended plaintiff undergo a cervical myelogram to rule out the possibility of a herniated disc; the result of which was normal (that is negative).
The next month, on April 16, 1979, plaintiff returned to Dr. Applebaum complaining of severe constant pain in the back of his left leg and stiffness and soreness in his neck. Nerve conduction studies and electromyogram of the muscles in the left leg showed no evidence of abnormalities. It was on that occasion that Dr. Applebaum felt that a repeat hospitalization for epiduravenography and possibly a repeat myelogram should be performed and this time with concentration on the lumbar area. The lumbar myelogram was performed on June 28, 1979. The findings indicated that there was some slight asymmetry of the nerve roots at the L-5, S-1 level. An epiduravenogram showed an occlusion of the anterior interarticular veins at the L-5, S-1 level.
Following the epiduravenogram, Dr. Applebaum performed a hemilaminectomy in the lumbar area at the L-4-5 and L-5, S-1 interspaces on the left side. Looking into the L-4-5 interspace on the left, Dr. Applebaum found the L-5 nerve root to be bound with mild scar tissue coming off at a rather acute angle from the dura sac. He performed a foraminotomy, or unroofing of the nerve root as it comes out of the bony canal.
On October 17, 1979, Dr. Applebaum discharged plaintiff as he felt that from a neurological point of view, plaintiff was recovering from his surgery. Plaintiff returned to Dr. Applebaum on January 11, 1980 with continued back pain. Dr. Applebaum re-examined plaintiff, but felt he had done all he could from a neurological standpoint. *618 He then recommended an orthopaedic evaluation.
On June 3, 1980, plaintiff returned to the care of Dr. Kenneth Adatto, an orthopedist. The plaintiff testified that since the time of his discharge by Dr. Applebaum, he had attempted to return to work at a store named Menard, as a "selector", essentially doing the same kind of work as he had done for the defendant. Plaintiff testified that he had to quit working because of the pain in his back and left leg. He was unable to secure employment with anyone (although he had sought work with National Canal Villere and A & P Stores) following the Menard job and for a period of time, somewhere between four and six months, he received unemployment compensation benefits.
Defendant paid compensation benefits from October 7, 1978 through December 1, 1978, and again paid benefits from February 23, 1979 through October 31, 1979 for a total of $6,183.86.
Dr. Adatto continued to treat the plaintiff through March 19, 1981. At that time, Dr. Adatto felt plaintiff should not stoop, bend or lift objects over twenty-five to fifty pounds. He assigned a fifteen percent anatomical disability to the back as a whole.
On December 8, 1981, plaintiff was examined by Miss Gay Meyers, Director of Occupational Therapy at Tulane Medical Center. Miss Meyers found that plaintiff should not perform any heavy lifting, heavy carrying, heavy pushing or pulling, overhead reaching, low reaching of weighted objects or any activities requiring weighted trunk flexion.
On appeal the defendant asserts the following issues:
1.) The trial court erred in finding a causal relationship between the accident of October 6, 1978 and the low-back complaints where the evidence, circumstantial in nature, involved an inference upon an inference.
2.) The trial court erred in awarding partial disability where the treating and operating doctor returned the injured worker to his previous occupation upon medical discharge.
3.) The trial court erred, based upon the evidence, in not awarding compensation benefits based upon L.S.A.-R.S. 23:1221(4)(p).
Under our workmen's compensation statute, the plaintiff (employee) is entitled to benefits if he "... receives personal injury by accident arising out of and in the course of his employment ..." LSA-R.S. 23:1031. The trial court held that the partial disability suffered by the plaintiff was causally connected to the employment accident.
The plaintiff (employee) in workmen's compensation litigation bears the burden of establishing the causal relationship between the disability and the employment accident by a reasonable preponderance of the evidence. Prim v. City of Shreveport, 297 So.2d 421, (La.1974). Nevertheless, it is not necessary for the experts to determine the exact cause of the disability in order for the employee to recover. The complaint need show only by a preponderance of the evidence that the work accident caused the disability. Allor v. Belden Corp., 393 So.2d 1233 (La. 1981); Lucas v. Insurance Company of North America, 342 So.2d 591 (La.1977). "... furthermore, medical testimony `must be weighed in the light of other credible evidence of a nonmedical character, such as a sequence of symptoms or events in order to judicially determine probability' ...." Schouest v. J. Ray McDermott & Co., 411 So.2d 1042, (La.1982).
An employee's disability will be presumed to have resulted from an employment accident if before the accident the employee was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves, provided that the evidence shows that there is a reasonable possibility of causal connection between the accident and the disabling condition. Allor v. Belden Corp., supra at 1236; Lindsey v. H.A. Lott, Inc., 387 So.2d 1091 (La.1980); and Lucas v. Insurance Company of North *619 America, supra at 596. This presumption is not a conclusive one; rather, it compels the defendant to come forward with sufficient contrary evidence to rebut it. Allor v. Belden Corp., supra at 1236.
As the facts in the record illustrate, the plaintiff did not suffer from any apparent disabilities or abnormalities in his neck or back until he experienced the mechanical trauma to that portion of his left side. There was no prior history of back and/or neck trouble. Dr. Applebaum, the neurosurgeon, testified at trial that he first began treating the plaintiff on February 23, 1979. At that time, the plaintiff was complaining primarily of pain in the left side of his neck, on the anterior part of his neck on the left side and discomfort around his left shoulder blade. On March 13, 1979, Dr. Applebaum recommended that the plaintiff undergo a cervical myelogram to rule out the possibility of a herniated disc. The myelogram, which involves inserting a needle in the patient's lumbar area, was performed at Touro Infirmary on March 26, 1979. On April 16, 1979, plaintiff returned to Dr. Applebaum with the low back pains which he suffers today.
On June 28, 1979, Dr. Applebaum performed a lumbar myelogram on the patient. He testified that there was some slight asymmetry of the nerve roots at the L-5, S-1 level and occlusion of the anterior interarticular veins at the L-5, S-1 level. During a subsequent hemilaminectomy in the lumbar area, Dr. Applebaum testified that he discovered the L-5 nerve root to be bound with mild scar tissue, which he unroofed.
In response to a direct question as to the origin of the scar tissue, Dr. Applebaum testified that the only conclusion he could draw is that the needle used in the earlier cervical myelogram hit a nerve root during the procedure, causing some bleeding and hemorrhaging around the nerve root, and some scarring. He further testified that his conclusion was supported by the plaintiff's history, in that he had no complaints of back problems until some two weeks after the cervical myelogram was performed, and that scar tissue formation occurs after a period of several days from an injury.
The testimony of Dr. Applebaum is as follows:
"The Court:
What you are saying is the scar tissue, as best as you can tell from a medical certainty, is that it resulted from something done during a myelogram:
The Witness:
Correct."
The testimony of Dr. Applebaum, which was uncontradicted at trial, together with the plaintiff's prior medical history are sufficient evidence to prove that it is more probable than not that the scar tissue found in the plaintiff's lower back was caused by the cervical myelogram.
As to whether the scar tissue causes the plaintiff's back pain, Dr. Applebaum testified in response to a direct question from the trial judge, that he found no other neurological reason for plaintiff's pain other than the scar tissue he found during the hemilaminectomy. He testified that based upon everything he knew from his medical training, in his opinion, plaintiff's pain was related to the scar tissue. The sequence of events and Dr. Applebaum's testimony establish a reasonable possibility of causal connection between the accident and the disabling condition.
With respect to the other issues on appeal, we find no error. Under LSA-R.S. 23:1221(3), an injured workman is partially disabled if, because of his injury, he cannot return to his former employment but can perform gainful employment in another position Kilbourne v. Armstrong, 351 So.2d 802 (La.App. 1st Cir.1977). Furthermore "... if a worker cannot perform the same work that he did before his injury because it causes him substantial pain, but he has the mental capacity and physical capability to perform other jobs which are available, he should be considered partially disabled. Such classification will protect him in any work in which he earns less than he did before his injury. Moreover, he will not be deprived of compensation on the theory *620 that there is less strenuous work available, as the employer will have to prove the availability of other jobs." Dusang v. Henry C. Beck Builders, Inc., 389 So.2d 367 (La.1980).
We note at this point that physical inability to return to work and inability to return to work due to substantial pain are questions of fact. The determination of fact made by a trial court will not be disturbed when there is evidence, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court's findings, unless those findings are clearly wrong. Crump v. Hartford Accident and Indemnity Company, 367 So.2d 300 (La.1979). In this regard, our learned brothers on the Louisiana Third Circuit Court of Appeal stated in Conlay v. Houston General Insurance Company, 370 So.2d 196, (La.App. 3rd Cir.1979) at page 200:
"... The trial court's favored position in seeing and hearing live witnesses is especially important when the factual determination involves a concept as subjective as pain. Colorful inflections and subtle nuances given to spoken and physical expressions describing the degree of pain simply do not come out in the black and white transcription of testimony contained in the appellate record."
The record is convincing that the plaintiff is in pain; for no evidence contradicts his testimony that it is constant. The pain interferes with overhead work and heavy lifting. Nevertheless, he could continue to work and perform duties except for the heavy lifting. Under the Workmen's Compensation Act, an employee is deemed partially disabled if he is unable "... to perform the duties in which he was customarily engaged when injured or duties of the same or similar character, nature, or description, for which he was fitted by education, training, and experience ..." LSA-R.S. 23:1221(3).
With respect to the plaintiff's assignment of error, we find that it is without merit. The plaintiff argues that he falls within the purview of the "odd-lot" doctrine, although the record lacks sufficient evidence which would sustain the plaintiff's position.
The injury complained of does not substantially impair his (plaintiff) ability to compete in the labor market. While plaintiff's back injury prevents him from continuing in his former occupation of lifting heavy objects, it does not keep him from engaging in lighter work of a similar nature.
In this case, even though we agree that the plaintiff may have to work in pain, he is not totally disabled with respect to the application of the "odd-lot" theory.
For the reasons assigned, the judgment appealed from is affirmed.
AFFIRMED.