470 So.2d 492 (1985)
Henry Howard LANUS
v.
GULF WANDES CORP., et al.
No. CA 84 0450.
Court of Appeal of Louisiana, First Circuit.
May 29, 1985.
*493 Charest Thibaut, III, Baton Rouge, for plaintiff-appellant Henry Howard Lanus.
Robert Vandaworker, Baton Rouge, for defendant-appellee.
Before WATKINS, CRAIN and ALFORD, JJ.
ALFORD, Judge.
This is an appeal from a judgment denying plaintiff-appellant's permanent total disability workmen's compensation claim against his employer, Gulf Wandes Corporation and Gulf Wandes' insurance carrier, Liberty Mutual Insurance Company. Plaintiff, Henry Howard Lanus, injured his back on or about December 9, 1980, while he and several co-workers were moving a heavy pipe on Gulf Wandes' property.
Plaintiff did not see a doctor about his back injury until January 15, 1981, at which time his physician diagnosed his injury as lumbar sacral strain. He worked intermittently after the accident until July of 1981. However, he was paid either wages or workmen's compensation benefits under La.R.S. 23:1221 (Supp.1984) from the date of the accident until August 23, 1982, at which time his physician, a neurosurgeon, reported that plaintiff could return to work and that his disability was zero percent. He did not return to work. In October of 1982, he sought the medical attention of Dr. Harry Philibert, a general practitioner, and filed this suit seeking permanent total disability compensation on April 26, 1984, in forma pauperis. After hearing the evidence, the trial judge held that plaintiff had not proved permanent and total disability by a preponderance of the evidence. We affirm.

MEDICAL HISTORY
Plaintiff, a forty-year-old male with a ninth grade education, was injured while working as a common laborer for the defendant, Gulf Wandes Corporation. He did not realize he had injured his back until the evening of the day of the accident. The accident occurred on a Friday. His back continued to bother him throughout the weekend and he did not report for work the following Monday or Tuesday. He returned to work on Wednesday. His back continued to hurt; therefore, on January 15, 1981, he went to Dr. Alvin C. Williams, a general practitioner, who had x-rays made, diagnosed the plaintiff's problem as lumbar sacral strain, and prescribed medication. On January 27, 1981, plaintiff went for the first of five visits to Dr. Lloyd Champagne, who diagnosed his injury as a lumbar sprain and pulled ligaments. Dr. Champagne's report indicates that he told plaintiff he could return to work on or about February 15, 1981. Dr. Champagne had the plaintiff's back x-rayed, treated him with medication and injections, and instructed him on low back exercises. When plaintiff continued to complain of pain, Dr. Champagne referred him to Dr. Kenneth Cranor, an orthopedic specialist. His last visit to Dr. Champagne was in April of 1981.
The plaintiff saw Dr. Cranor for the first of six visits on September 3, 1981. At that time, the doctor recommended that the plaintiff not return to work immediately. The doctor's September 3, 1981, report indicates he examined the plaintiff both physically *494 and with x-rays, and reveals that "sustained involuntary muscle spasm was not present," that no neurological deficit or peripheral nerve tenderness was discovered and that plaintiff complained of leg and back pain during the straight leg raising tests. He prescribed physical therapy. Dr. Cranor's later reports indicate that he was unable to find any objective physical reasons for the plaintiff's continued symptoms, that he recommended physical therapy and medication, and that on December 4, 1981, he felt plaintiff should be able to return to work. Plaintiff's last visit to Dr. Cranor was on January 29, 1982, when he was again x-rayed. On this date, Dr. Cranor advised the plaintiff that plaintiff's tests were normal, that he could not identify the source of plaintiff's continued symptoms, and that plaintiff should consult another physician if he felt he could not function reasonably in his present condition.
The plaintiff then went to another orthopedic surgeon, Dr. Andrew T. Kucharchuk, on February 3, 1982. The doctor examined the plaintiff physically and made x-rays which were negative as to fractures and dislocations. Dr. Kucharchuk sent the plaintiff to Dr. O.P. McCutchen at Baton Rouge General Hospital for neuromuscular tests. Dr. McCutchen's February 10, 1982, report stated he found "no real evidence of neuromuscular disorder except a mild neuropathy of unknown etiology." Dr. Kucharchuk again saw the plaintiff on February 19, 1982, with no change in findings. As of March 12, 1982, Dr. Kucharchuk still felt that the plaintiff was disabled, but he did not anticipate any permanent disability.
Because of plaintiff's continued complaints, Dr. Kucharchuk referred him to Dr. George Lohmann, Jr., a neurosurgeon. Dr. Lohmann examined the plaintiff on March 24, 1982, and his report states that the plaintiff complained of low back pain, shoulder pain, intrascapular pain and occasional leg pain, but was unable to demonstrate where the pain was located. The report further states that no paracervical, paralumbar, strap muscle or other spasms were noticed by the doctor, and that the plaintiff's reflexes, strength, gait and station and cerebral testing were within the normal limits. His recommendation was for the patient to return to work. The report also indicates he was familiar with what the plaintiff's job entails.
On April 24 and May 6, 1982, plaintiff went to the emergency room at Earl K. Long Hospital complaining of low back pain. On August 13, 1982, plaintiff was admitted to Our Lady of the Lake and examined by Dr. Lohmann again. Dr. Lohmann stated in his report that the examination was normal but that he ordered a complete workup because of the plaintiff's symptoms. A lumbar myelogram and EMG were performed, both of which were within normal limits. Dr. Lohmann then discharged the patient back to Dr. Kucharchuk's care, told him to return to work in one week and reported that his disability was zero percent. Liberty Mutual ceased the workmen's compensation payments August 23, 1982.
On October 11, 1982, the plaintiff went to Dr. Harry H. Philibert, a family practice physician, who operates the New Orleans Pain Clinic in Metairie. The plaintiff complained of pain in the back and shoulders. Using physical palpitation, Dr. Philibert diagnosed the problem initially as inflammation and swelling of the ligaments of the patient's back with constant muscle spasms. He testified that such injury is not diagnosed through x-ray procedures, but by physical examination, using standard tests like those done by other physicians. He found no nerve compression or disc problem. He recommended exercises and medication, and has continued to treat the patient with several medications. By means of physical examination, he has since diagnosed the plaintiff's injury as a relatively mild case of extrapyramidal irritation of the extrapyramidal nervous system, a nerve injury which manifests itself by muscle spasms when the muscles are at rest. He testified that this is an intensely painful condition and that he could not determine when the plaintiff could return to work. He recommended a continued regimen *495 of medication and exercises, with the hope that the pain would eventually wear off.

DISABILITY
Plaintiff argues that the trial court erred in not finding him permanently and totally disabled pursuant to the odd lot doctrine. Under this doctrine, a claimant is totally and permanently disabled if he can prove that, because of his physical injury coupled with other factors such as mental capacity, education, training or age, he can perform only services which are so limited in quality, dependability or quantity that a reasonably stable market for them does not exist. Oster v. Wetzel Printing, Inc., 390 So.2d 1318 (La.1980). The odd lot doctrine is also applicable to substantial pain cases where a worker can function only with substantial pain. Lattin v. Hica Corporation, 395 So.2d 690 (La.1981).
Where pain is the main factor in setting forth a prima facie case for a worker's classification in the odd lot category, the pain accompanying routine physical tasks and attempts to return to work must be substantial, serious, intense or severe. Culp v. Belden Corporation, 432 So.2d 847 (La.1983). The claimant must prove to a legal certainty and by a reasonable preponderance of the evidence the nature and extent of his disability. The trial court must determine whether the claimant has carried his burden by examining the totality of the medical and lay evidence presented. Shatoska v. International Grain Transfer, Inc., 430 So.2d 1255 (La.App. 1st Cir.1983).
The inability to return to work because of substantial pain is a question of fact. A trial court's determination of fact based upon a reasonable evaluation of the presented evidence's credibility will not be disturbed unless those findings are clearly wrong. Field v. Winn Dixie Louisiana, Inc., 427 So.2d 616 (La.App. 5th Cir.1983). As the Third Circuit Court of Appeal stated in Conlay v. Houston General Insurance Company, 370 So.2d 196 (La.App. 3rd Cir. 1979) at 200:
The trial court's favored position in seeing and hearing live witnesses is especially important when the factual determination involves a concept as subjective as pain. Colorful inflections and subtle nuances given to spoken and physical expressions describing the degree of pain simply do not come out in the black and white transcription of testimony contained in the appellate record.
In the instant case, the plaintiff had to prove by a preponderance of the evidence that he was in substantial pain. After receiving the evidence presented by the several doctors' reports and by the live testimony of the plaintiff, his wife, a friend, a co-worker and Dr. Philibert, the trial court weighed the expert and lay evidence for credibility and found that the plaintiff had not met the required burden. The trial court gave oral reasons for dismissing the plaintiff's suit, which included the following comments:
[T]he court does not feel that plaintiff has proven his case by a preponderance of the evidence that he is disabled, with the testimony of Dr. Philibert, nor with the testimony of himself or his wife or Mr. Davis nor Dyson. This is certainly a credibility call by the court. I have seen Mr. Lanus in court, seated from about 9:15 this morning throughout the trial, watched him walk to the stand. I do know that there has been no testimony that he is suffering from any deformity; that he did sit and walk uprightly. The court does not feel that its judging credibility was wrong.
We accept the trial court's decision in this respect because we are unable to conclude that the court's finding is clearly wrong.
Plaintiff also contends the court erred in failing to afford the proper weight to the testimony of Dr. Philibert. The jurisprudential rule that positive findings of a medical expert should be afforded greater weight than negative findings as to the *496 existence or not of a particular symptom is an important rule; however, there are many rules and constructions of evidence that must be weighed in seeking a final determination. Smith v. Highlands Insurance Company, 222 So.2d 540 (La.App. 4th Cir.1969). It is also well settled that the trial court should assess the credibility of experts to determine the most credible evidence. After weighing and evaluating all of the medical evidence, the trial court may accept or reject the opinion expressed by a medical expert, depending on how impressed the court is with the qualifications and testimony of that expert. Guidry v. Davis, 382 So.2d 250 (La.App. 3rd Cir. 1980).
In the instant case, the trial court in its oral reasons for denial of plaintiff's claim stated:
Dr. Philibert, like any other witness, is subject to the scrutiny of the court insofar as his credibility as to what probative weight the court will give each person's testimony. The court is not impressed whatsoever with the testimony of Dr. Philibert; ... the other physicians did not find those particular findings that Dr. Philibert said he found.
Thus it is evident from the record that the trial court weighed and discarded Dr. Philibert's testimony as not credible.
The plaintiff also contends that the diagnosis of the treating physician should be accorded greater weight than that of doctors examining for litigation purposes. While this is true, it is not applicable to the instant case since all the physicians who have examined the plaintiff have also treated him. Moreover, defendants did not select any of the physicians who have treated the plaintiff.
For the foregoing reasons, we affirm the judgment of the trial court denying plaintiff's permanent total disability claim. Costs of this appeal are to be borne by the forma pauperis account.
AFFIRMED.