518 So.2d 9 (1987)
Jerome HARRIS
v.
J.L. RUMOLD and the Hartford Accident & Indemnity.
No. CA 7784.
Court of Appeal of Louisiana, Fourth Circuit.
December 15, 1987.
*10 Wayne H. Carlton, Jr., New Orleans, for plaintiff.
Monica C. Flanagan, Metairie, for defendants.
Before BARRY, BYRNES and ARMSTRONG, JJ.
ARMSTRONG, Judge.
Plaintiff, Jerome Harris, instituted this worker's compensation suit against J. L. Rumold and their insurer, Hartford Accident and Indemnity Company, ("Hartford"), seeking total and permanent disability benefits, statutory penalties and attorney's fees as a result of a work related accident. From the trial court's judgment dismissing his claim, Harris appeals. We affirm.
The record reflects that on March 7, 1985[1] Harris a construction worker employed by Rumold, was injured in a fall from a scaffold in the course and scope of his employment. He fell approximately 17 to 20 feet and landed on his feet and then fell backwards. Shortly after the fall he was transported by ambulance to Tulane Medical Center where he was seen by the emergency room physician. After examining Harris and taking X-rays, the attending physician found no obvious fractures or dislocations. Harris was released from the hospital after a few hours and instructed to get bed rest. The next day, March 8, 1987, Harris returned to the emergency room complaining of dizziness and back pain. He was examined again but no objective findings were noted. The physician felt Harris might have a muscle sprain so he instructed Harris to make an appointment at the Tulane Orthopedic Clinic.
Dr. Thomas Whitecloud, an orthopedic surgeon at Tulane Medical Center, first saw Harris on March 12, 1985. Dr. Whitecloud examined Harris and found no abnormalities of the neck or lower back except for some mild tenderness in the lumbar region and around the right shoulder. He also examined Harris' x-rays and found them to be normal. He diagnosed Harris as having a lumbar sprain and prescribed an analgesic and muscle relaxant. At trial, Dr. Whitecloud stated that he had released Harris to go back to work sometime after his visit on March 12, 1985, but Harris had not done so by his March 26 visit. Harris was seen again on July 12, 1985 complaining of neck and back pain. Harris told Dr. Whitecloud that he had tried to return to work three weeks earlier but after three hours he stopped because of pain. Dr. Whitecloud stated that he could not find anything objectively wrong with Harris but restricted him from returning to work for two to three weeks. Harris was subsequently seen by Dr. Whitecloud on August 9, September 24, 1985 and October 11, 1985. At each visit Dr. Whitecloud could not find anything wrong with plaintiff.
By November 8, 1985 Harris was still complaining of back pain. A CAT scan was performed and the results were completely normal. On the November 22, 1985 visit, despite the lack of objective findings, Dr. Whitecloud suggested that Harris try to get into a rehabilitation program to help him get back to work. This opinion was based heavily on Harris' subjective complaints and the fact that he had been out of work for a while. In a letter dated January 4, 1986 to the State Office of Disability Determination Services, Dr. Whitecloud stated that by October 11, 1985 Harris had improved a great deal. He certainly did not feel that Harris was disabled and therefore could return to work.
As of the time of trial, Dr. Whitecloud continued to see Harris and at no time, except for the initial visit on March 12, 1985, was he able to support Harris' subjective complaints of pain with objective findings.
At the request of Hartford, Harris saw Dr. Harold Stokes, an orthopedic surgeon, for an independent evaluation. Hartford requested this evaluation after Harris' second *11 visit to Dr. Whitecloud revealed no objective indications of an impairment. Harris initially saw Dr. Stokes on April 9, 1985 and he confirmed Dr. Whitecloud's report that Harris' complaints could not be substantiated by any objective findings. Dr. Stokes advised Harris to continue his physiotherapy with the offices of Houston, Roy, Faust & Ewin. Harris returned to Dr. Stokes on April 29, 1985, May 14, 1985, May 28, 1985, and June 10, 1985. On his May 28 visit Dr. Stokes encouraged Harris to return to work. On his June 10 visit Harris told Dr. Stokes that he tried to work around the house but could not because of pain. Dr. Stokes had a bone scan and an EMG performed and the results were normal. Dr. Stokes advised Harris on his June 24, 1985 visit that all the studies and tests were inconsistent with any ongoing injury and Harris could return to work. Dr. Stokes last saw Harris on July 23, 1985 and again noted no objective findings.
Dr. Joseph M. Epps, a neurosurgeon, examined Harris on April 18, 1986 at the request of Harris' attorney. Harris went to Dr. Epps with complaints of headaches. A CAT scan was performed and the results were normal. Both Dr. Whitecloud and Dr. Stokes testified that Harris made no complaint of headaches to them. Harris returned to Dr. Epps on May 16, 1986. Dr. Epps stated that all the neurological findings were within normal limits and he felt that Harris' headaches were caused from stress and not from the fall. Dr. Epps felt that Harris' problems were orthopedic in nature and he would defer to the other doctor's opinions regarding Harris' back pain.
It was stipulated at trial that Hartford made worker's compensation payments at the rate of $158.28 per week for a period beginning March 8, 1985 through July 11, 1985, plus all medicals. Robert Golus, adjuster with Hartford, testified that benefit payments were terminated on July 11 because Dr. Stokes had released Harris to go back to work. Upon termination of the compensation benefits Harris filed this suit.[2] The trial court rendered judgment on December 1, 1986 dismissing Harris' suit.
Harris appeals from this judgment alleging three specifications of error.
(1) The trial court erred in failing to find that Harris was permanently and totally disabled.
(2) In the alternative, the trial court erred in failing to award Harris temporary and total disability benefits until he is rehabilitated.
(3) The trial court erred in failing to order defendants to provide rehabilitative services pursuant to LSA-R.S. 23:1226.
The grant of worker's compensation benefits for temporary and permanent total disability is governed by LSA-R.S. 23:1221(1) and (2) which provide in part:
Compensation shall be paid under this Chapter in accordance with the following schedule of payments:
(1) Temporary total. For injury producing temporary total disability of an employee to engage in any self-employment or gainful occupation for wages whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, or experience, sixty-six and two-thirds percent of wages during the period of such disability.
(2) Permanent total.
(a) For any injury producing permanent total disability of an employee to engage in any self-employment or occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured, and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, and experience, sixty-six and two-thirds percent of *12 wages during the period of such disability.
(b) For purposes of Subparagraph (2)(a) of this Paragraph, compensation for permanent total disability shall not be awarded if the employee is engaged in any employment or self-employment regardless of the nature or character of the employment or self-employment including but not limited to any and all odd-lot employment, sheltered employment, or employment while working in any pain.
(c) For purposes of Subparagraph (2)(a) of this Paragraph, whenever the employee is not engaged in any employment or self-employment as described in Subparagraph (2)(b) of this Paragraph, compensation for permanent total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment, including, but not limited to, any and all odd-lot employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self-employment.
The 1983 amendments to the Worker's Compensation Act placed a more stringent burden of proof on the claimant seeking benefits for permanent total disability than for a claimant seeking temporary total disability. Price v. Fireman's Fund Ins. Co., 502 So.2d 1078 (La.1987). LSA-R.S. 23:1221 (2)(c) requires the employee to prove a permanent total disability by clear and convincing evidence. Whereas, the level of proof required to prove a temporary total disability continues to be the preponderance of the evidence test. Bailey v. Zurich American Ins. Co., 503 So.2d 611 (La.App. 4th Cir.1987).
When claiming a total disability, whether permanent or temporary, the plaintiff must prove his inability to engage in any gainful occupation whether or not the same or similar to that in which he was customarily engaged when injured. Bailey, supra. Once the trial court has made factual findings as to disability, the reviewing court must give great weight to those determinations. Virgil v. American Guar. & Liability Ins., 507 So.2d 825 (La.1987). Reasonable evaluations of credibility and reasonable inferences of fact by the trial court will not be disturbed on appeal unless such findings are manifestly erroneous. Anderson v. Meeker Sugar Co-Op., Inc., 476 So.2d 1156 (La.App. 3rd Cir.1985); Virgil, supra. The reason for this principle of review is based upon the trial court's opportunity to evaluate live witnesses, as compared to an appellate court, which only has access to a cold record. Virgil, supra. Permanent & Total Disability
At trial three physicians testified concerning their treatment of Mr. Harris. Appellant urges us to accept Dr. Whitecloud as his treating physician and alleges that the trial court erred in not accepting Dr. Whitecloud's testimony which showed that Harris was permanently and totally disabled. Generally, a treating physician's testimony is given greater weight than that of a physician seen for litigation purposes, since a treating physician has the opportunity for repeated examinations and observations of the patient. Sino v. Chalmette General Hosp., 489 So.2d 311 (La.App. 4th Cir.1986). In the instant case both Dr. Stokes and Dr. Whitecloud could be considered treating physicians since they both saw Harris repeatedly and observed his progress over a period of time. Even if Dr. Whitecloud's testimony was given more weight, it is clear that he felt Harris was not permanently and totally disabled and could return to work. We conclude that the trial court was correct in holding that Harris failed to prove by clear and convincing evidence that he was totally and permanently disabled.
Temporary & Total Disability
We now consider whether Harris proved that he was temporarily and totally disabled. A claimant is entitled to an award for temporary total disability if he establishes that he is unable to pursue either *13 the same occupation or another gainful occupation at the time of trial, though it appears he will be able to return to some type of work in the foreseeable future. Green v. Jackson Rapid Delivery Service, 506 So.2d 1345, 1347 (La.App. 2nd Cir. 1987).
Although the trial court never specifically stated that Harris failed to prove that he was temporarily totally disabled at the time of trial, it is clear that the trial court found that Harris failed to prove by a preponderance of evidence that at the time of trial that he was disabled, either temporarily or permanently, as a result of his March 7, 1985 accident. The medical testimony of all three doctors was consistent with this conclusion because they could find no objective indications to substantiate Harris' complaints.
Although Harris may have been disabled for a short time after the accident, there is little evidence to establish that his disability persisted past July 11, 1985, the date benefits were terminated. Dr. Stokes released Harris to return to work on his June 24, 1985 visit. Dr. Whitecloud originally released Harris to go back to work after his initial visit on March 12, 1985. However, when Harris returned on March 26 and stated that he could not return to work, Dr. Whitecloud felt more tests were necessary. This opinion relied heavily on Harris' subjective complaints. Harris' testimony of continuing back pain must be considered in the light of the medical opinions which found little, if any, objective evidence to support his complaints.
Given the testimony and the evidence in the record, we conclude that the trial court was correct in finding that Harris failed to prove by a preponderance of the evidence that his disability extended beyond July 11, 1985, the date when defendant, Hartford, ceased paying benefits.
Rehabilitation Services
In addition, Harris alleges that he is entitled to rehabilitation services pursuant to LSA-R.S. 23:1226. In pertinent part this statute provides:
"A. When an employee has suffered an injury covered by this chapter which preeludes the employee from earning wages equal to wages earned prior to the injury, the employee shall be entitled to prompt rehabilitation services".
The Second Circuit in Works v. Trinity Universal Ins. Co., 501 So.2d 1045 (La. App. 2nd Cir.1987) stated that the first sentence of the statute is a condition which must be met before a claimant is entitled to rehabilitation.
The medical testimony was unanimous that by the time of trial Harris was not disabled and could return to work. Harris bases his claim for rehabilitation services on Dr. Whitecloud's testimony. Dr. Whitecloud stated he felt Harris could not return to his former position and since Harris had been out of work for over a year he might need rehabilitation to get back into the work force. Dr. Whitecloud also testified that his advice was based upon Harris' subjective complaints. Dr. Stokes testified that Harris was not disabled and could return to work. As stated previously, there were no objective findings by any doctor to support Harris' complaints.
The purpose of the statute is to educate and increase the job marketability of employees who cannot return to their former positions. Sino, supra. This does not include employees who are able to return to work but refuse to do so. We therefore conclude that Harris failed to show that his injury prevents him from earning wages equal to the wages earned prior to the accident and that defendants are under no obligation to provide rehabilitative services.
For the foregoing reasons, the judgment of the trial court is affirmed. The costs of this appeal are assessed to the plaintiff-appellant.
BYRNES, J., concurs in result.
NOTES
[1] At trial all parties stipulated to this date. Plaintiff alleges that he was injured on February 7, 1985, however, all the evidence (including the emergency room records) indicate that he was injured on March 7, 1985. The correct date of the injury is needed only to clarify the facts and is not necessary to decide the issues on appeal.
[2] The claim was submitted to the Office of Worker's Compensation for informal resolution. The office recommended that temporary total benefits be paid from March 8, 1985 through June 27, 1985. This recommendation was rejected by Harris.