CARTER, Judge.
This is a suit for worker’s compensation benefits.
FACTS
Plaintiff, Ray Merritt, is a thirty-four-year-old male with a tenth grade education who was injured in the course and scope of his employment with Crown Zellerbach Corporation. On March 2, 1982, while doing some control burning of timberland, plaintiff received flesh burns to his left arm when some discarded aerosol cans exploded. Plaintiff was taken to the company physician following the accident, where he was given a tetanus shot, a can of Foille spray, and some pain medication. Plaintiff returned to work the day following the accident and worked for the next two days. Thereafter, plaintiff went to see his family physician, Dr. Gerald L. Foret. Dr. Foret diagnosed plaintiff’s injuries as first and second degree bums to the left side of the face and left upper arm. Dr. Foret admitted plaintiff to the Riverside Medical Center where he stayed for ten days.
Dr. Foret examined plaintiff over the next two months, during which time plaintiff developed problems with tightness of his arm during flexion. On May 27, 1982, plaintiff still complained of weakness, pain, and swelling in his left arm. Upon examination, Dr. Foret found atrophy of the muscle and referred plaintiff to Dr. Roger Blitz, an orthopedic surgeon.
Dr. Blitz examined plaintiff in late May, 1982, and diagnosed lateral epicondylitis of the left elbow. He injected a steroid in the painful region of plaintiff’s left arm over the next few weeks, but plaintiff continued to complain of pain. In July, 1982, Dr. Blitz performed a surgical release of the lateral muscles from the epicondyle. Plaintiff continued to see Dr. Blitz following the surgery and on August 13, 1982, was released to return to work. Plaintiff continued to complain of pain and twitching in the extensor muscles of his left arm, and on September 7, 1982, Dr. Blitz referred plaintiff to Dr. Richard Chuinard, another orthopedic surgeon and a specialist in hand and upper extremity surgery. Dr. Blitz felt that plaintiff may have had some scarring anterior to the epicondylar region, which might need to be released.
After Dr. Blitz released plaintiff, plaintiff returned to work with Crown Zeller-bach in a janitorial position. He was required to clean, sweep, and mop the office floors, load parts, and occasionally mow grass. Plaintiff testified that he experienced muscle spasms and swelling of his left arm on several occasions after sweeping floors and loading parts. Malcolm Sib-ley, a Crown Zellerbach supervisor, confirmed plaintiff’s complaints of pain and swelling.
Dr. Chuinard first saw plaintiff in November, 1982. At that time, plaintiff complained primarily of numbness in the ulnar nerve distribution of his hand, resulting in an inability to hold large objects. Examination showed that plaintiff had full range of motion, but some irritability of the ulnar nerve. Also, although plaintiff was left- *296 handed, his left hand was weaker than his right. Dr. Chuinard diagnosed plaintiffs condition as an irritable ulnar nerve at the level of his left elbow. Dr. Chuinard felt that no immediate action should be taken and that plaintiffs pain was probably “muscle disuse type of muscle pain” and that the symptoms should gradually subside as plaintiff increased the use of his arm. Dr. Chuinard opined that plaintiff was not disabled at that time.
Plaintiff continued to see Dr. Chuinard over the next few months, complaining of aching and numbness in his left arm. On February 24,1983, Dr. Chuinard’s examination revealed a drop-off in grip strength in plaintiffs left arm and atrophy of the muscle in the left forearm. Dr. Chuinard was concerned that scarring from the initial surgery was causing the problem. On April 19, 1983, Dr. Chuinard performed surgery, removing the scar and fibrous tissue which had built up in the elbow and forearm area.
Plaintiffs recovery progressed; however, in July and the months which followed, he again complained of pain and numbness. Despite his knowledge of plaintiffs duties, including the loading and unloading of trucks and heavy lifting, on August 29, 1983, Dr. Chuinard released plaintiff to return to work without limitation.
In September, 1983, plaintiff returned to work for the first time since his April surgery and worked as a log truck driver. After a month of physical therapy following a set-back, plaintiff again saw Dr. Chui-nard on October 13, 1983. He complained of some spasm and tenderness in his left arm. Dr. Chuinard discharged plaintiff, advising that plaintiff’s symptoms should resolve themselves over the next six months. Dr. Chuinard assessed a fifteen percent anatomical disability rating to plaintiff’s left arm, but concluded that such disability should not interfere with his work activities.
In December, 1983, and January, 1984, plaintiff missed work due to hospitalization and treatment for pneumonia and flu. On January 12, 1984, Dr. Chuinard provided plaintiff with a tennis elbow band to use for the next month and also advised him not to lift more than thirty pounds. The recommendations were not based on objective findings, but on plaintiff’s subjective complaints of pain.
On February 16, 1984, plaintiff informed Dr. Chuinard that he had sustained an injury to his left arm when a side brace on a truck slipped from his hand. Dr. Chuinard recommended that plaintiff rest his arm for two weeks, noting in his report that plaintiff’s unhappiness with his job could be contributing to the problems with his arm.
Plaintiff then became ill with hepatitis and did not work for an extended period. When he reported to work in September of 1984, his job had been filled by a senior employee. Although he has applied for employment at various places, he had not found employment at the time of trial.
On October 4, 1984, plaintiff saw Dr. Chuinard and complained of numbness and tingling in his left hand. Dr. Chuinard ordered a repeat nerve conduction study and concluded from the results that plaintiff had a mild sensory drop-out — a sensation of numbness and tingling in his fingers. Dr. Chuinard was of the opinion that this condition would not restrict plaintiff’s use of his hand and released plaintiff to return to unrestricted employment. Crown Zellerbach discontinued the payment of benefits on October 29, 1984.
Dr. Chuinard again saw plaintiff in February and March 1985, at which time plaintiff complained of burning around his elbow and throbbing in his fingers. Dr. Chuinard could find no physical cause for plaintiff’s pain and felt plaintiff could perform unrestricted employment. Dr. Chui-nard indicated that plaintiff’s complaints of numbness and tingling were reasonable and that the burning pain might be due to nerve irritation. He also stated that it was doubtful that any such pain was severe, but that plaintiff could be experiencing moderate pain. At this time, Dr. Chuinard referred plaintiff to Dr. Earl Hackett, a neurologist, for another nerve conduction study and a neurological examination.
Dr. Hackett saw plaintiff in April, 1985. On examination, he found that plaintiff had *297 some twitching of the forearm muscle, decreased pinprick touch, abnormal sensations over the dorsal part of the arm, and irritability of the nerve over the scar area. Dr. Hackett continued to see plaintiff through July, 1985, during which time plaintiff's condition remained unchanged. Dr. Hackett concluded that plaintiff had some involvement of sensory fibers in the left forearm, that it was an aggravating but not debilitating condition, and that his symptoms were probably permanent. He also stated that he did not think plaintiff was fabricating his complaints, but that he had watched plaintiff without plaintiff’s knowledge and there was no twitching of the muscle. He described the movement as possibly a tick, a voluntary/involuntary movement.
Dr. Foret examined plaintiff again in June, 1985, and concluded that plaintiff was still disabled based on complaints of burning in the left arm and muscle spasms. On November 2, 1984, plaintiff filed suit for worker’s compensation benefits. After trial, the trial court found that plaintiff had fully recovered from his injuries at the time Crown Zellerbach stopped paying compensation benefits. Accordingly, the trial judge denied plaintiff’s claim for worker’s compensation benefits. From this judgment, plaintiff appeals.
The issues on appeal are: (1) the permanent and total disability of plaintiff under the “odd-lot” doctrine; and (2) plaintiff’s entitlement to penalties and attorney’s fees for nonpayment of benefits.
ODD-LOT DOCTRINE
Plaintiff argues that the trial court erred in not finding him permanently and totally disabled under the odd-lot doctrine.
Under the odd-lot doctrine, a claimant is totally disabled if he can prove that because of his physical injury, coupled with other factors such as mental capacity, education, training, or age, he can perform only services which are so limited in quality, dependability, or quantity that a reasonably stable market for them does not exist. Oster v. Wetzel Printing, Inc., 390 So.2d 1318 (La.1980). The odd-lot doctrine is also applicable to substantial pain cases where a worker can function only with substantial pain. Lattin v. Hica Corporation, 395 So.2d 690 (La.1981); Lanus v. Gulf Wandes Corp., 470 So.2d 492 (La.App. 1st Cir.1985).
The physical inability of a worker’s compensation claimant to return to work due to substantial pain is a question of fact, and the trial court’s determination will not be disturbed unless it is clearly wrong. Chiasson v. Lafourche Parish Council, 449 So.2d 110 (La.App. 1st Cir.1984). Lay testimony has great probative value in establishing both the existence of pain and the inability to work. See Tantillo v. Liberty Mutual Insurance Company, 315 So. 2d 743 (La.1975). However, it is the trial court’s function to determine the weight to be accorded both the medical and lay testimony. Chiasson v. Lafourche Parish Council, supra.
In the instant case, the plaintiff had to prove by a preponderance of the evidence that he was in substantial pain. In support thereof, plaintiff offered not only his own testimony, but that of his wife, his brother, and his co-workers. These witnesses verified plaintiff’s complaints of pain, muscle spasms, and swelling. He also offered the testimony of Dr. Foret, who felt that plaintiff was still disabled in June, 1985. However, following his referral to Dr. Blitz, Dr. Foret treated plaintiff only for general health problems and not for problems related to his left arm.
The medical opinions as to plaintiff’s disability were mixed. Dr. Chuinard felt that plaintiff may experience some moderate pain resulting from nerve irritation, but that the existence of severe pain was doubtful. He could find no objective indications for plaintiff’s complaints of pain, but felt that plaintiff’s condition was not debilitating and concluded that plaintiff could perform strenuous manual labor at the time compensation benefits were discontinued. Dr. Hackett described plaintiff’s symptoms as aggravating, but not debilitating or limiting plaintiff’s ability to perform manual labor. Neither Chuinard nor Hackett could substantiate or explain plaintiff’s complaints of swelling.
*298 After weighing and evaluating all of the medical evidence, the trial court may accept or reject the opinion expressed by a medical expert, depending on how impressed the court is with the qualifications and testimony of that expert. Lanus v. Gulf Wandes Corp., supra.
Although not specifically addressed in the written reasons, it is apparent that the trial judge found the medical opinions of Dr. Chuinard and Dr. Hackett to be more credible. Although we may have reached a different conclusion, we are unable to conclude that the factual findings of the trial court are clearly wrong. Sufficient medical testimony was presented by Dr. Chui-nard and Dr. Hackett for the trial court to conclude that plaintiff was not totally and permanently disabled as of October 29, 1984.
STATUTORY PENALTIES AND ATTORNEY'S FEES
Finally, plaintiff contends that the trial court erred in failing to assess penalties, interest, and attorney’s fees under LSA-R.S. 23:1201 and 1201.2 for Crown Zellerbach’s arbitrary and capricious failure to continue worker’s compensation benefits after October 29, 1984. The trial court found, and we affirmed, that plaintiff was not entitled to additional benefits. A finding that a claimant is not entitled to compensation benefits logically precludes a finding that the discontinuance or failure to pay those benefits is arbitrary or capricious. Whatley v. Hartford Accident & Indemnity Go., 509 So.2d 671 (La.App. 3rd Cir.1987), writ denied, 512 So.2d 441 (La.1987). Plaintiff is not entitled to penalties, interest, or attorney’s fees.
For the assigned reasons, the judgment of the trial court is affirmed. Costs of the appeal are assessed against plaintiff.
AFFIRMED.