CARTER, Judge.
This is an appeal from a trial court judgment denying plaintiff recovery of worker’s compensation benefits.
FACTS
On or about November 11, 1985, plaintiff, Selwyn Williams, was injured while in the course and scope of his employment as a tire-changer with defendant Kirk’s Tire and Performance Co. (Kirk’s). Plaintiff was injured when a tire fell from an overhead rack and struck him on the head.
Plaintiff was initially diagnosed as having suffered a scalp contusion and a possible cervical strain. He was thereafter treated conservatively by a number of physicians for a cervical strain. Plaintiff was then referred to a neurosurgeon by Kirk’s worker’s compensation insurer, the Hanover Insurance Company. After several months of conservative treatment, the neurosurgeon diagnosed a cervical disc rupture and performed an anterior cervical discec-tomy and fusion on March 4, 1986. On June 30, 1986, plaintiff was released to return to work.
Plaintiff received worker’s compensation benefits of $106.67 per week from the date of his injury through July 9, 1986. However, after having been released to return to work, plaintiff did not return to work. On October 8, 1986, plaintiff filed the instant suit for worker’s compensation benefits. After trial, the trial judge determined that plaintiff was not disabled because of “substantial pain” as provided in LSA-R.S. 23:1221(2)(c) so as to entitle him to temporary total or permanent total disability benefits pursuant to LSA-R.S. 23:1221(1) or (2). Further, the trial judge determined that plaintiff failed to prove by a preponderance of evidence that his injury resulted in an inability to earn wages equal to 90% or more so as to qualify for supplemental earnings under LSA-R.S. 23:1221(3)(a). Additionally, the trial judge determined that plaintiff is not entitled to permanent partial disability benefits under LSA-R.S. 23:1221(4)(q). Pursuant to these findings, the trial judge rendered judgment in favor of defendants, Kirk’s and Hanover, and against plaintiff, Selwyn Williams, dismissing plaintiff’s claims at his costs.
From this adverse judgment, plaintiff appeals, raising the following issues:
I. Did the trial court err in evaluating the medical and lay evidence concerning pain in light of LSA-R.S. 23:1221(2)(c)?
II. Is the worker disabled?
*876 III. Is plaintiff entitled to vocational rehabilitation and worker’s compensation benefits during the period, of training, pursuant to R.S. 23:1226?
MEDICAL HISTORY AND PHYSICAL CONDITION
Plaintiff, a twenty-eight-year-old tire-changer, was injured on November 11, 1985, while working for Kirk’s when a tire fell from an overhead rack and struck him on the head. After the accident, plaintiff was examined by a physician at La Med Walk In Medical Clinic. X-rays were also performed, which revealed no abnormality. Plaintiff was released, after being diagnosed as suffering from a scalp contusion and a possible cervical strain.
Thereafter, plaintiff was treated for neck pain and headaches at the Baton Rouge Chiropractic Clinic by Dr. C.A. Martello. Dr. Martello noted that plaintiff suffered spasm in the cervical area and had sustained an acute sprain to the cervical spine with no complications. Dr. Martello treated plaintiff conservatively, and plaintiff’s symptoms were relieved after four office visits. After the fifth visit, plaintiff was dissatisfied with Dr. Martello’s treatment and sought additional medical assistance.
On December 3, 1985, plaintiff was examined by Dr. Stephen M. Wilson of the Bone and Joint Clinic. Plaintiff complained of neck pain and headaches. Dr. Wilson's examination revealed minimal pain in the cervical area, but the examination was otherwise normal. The x-rays revealed no abnormality. Dr. Wilson determined that there was no objective reason for plaintiff’s subjective complaints of pain. Dr. Wilson determined that plaintiff would not suffer any permanent disability as a result of the injuries he sustained in the work-related accident.
Plaintiff was subsequently examined by Dr. Johnny V. Jenkins, an orthopedic surgeon, on December 10, 1985. Dr. Jenkins’ examination revealed no tenderness over the cervical spine, and the x-rays revealed no abnormalities. Dr. Jenkins opined that plaintiff may have suffered a cervical muscle strain at the time of his injury, but that this condition had resolved. Dr. Jenkins determined that plaintiff was capable of returning to his former employment, but recommended neurological consult if plaintiff’s complaints of headaches continued.
Hanover referred plaintiff to Dr. Anthony S. Ioppolo of Baton Rouge Neurological & Neurosurgical Associates for neurological evaluation on December 16, 1985. Dr. Ioppolo treated plaintiff conservatively through February, 1986. In February, 1986, Dr. Ioppolo recommended plaintiff undergo a CT-Sean of his neck. The CT-Scan showed a cervical disc rupture at C5-C6. On March 4, 1986, Dr. Ioppolo performed an anterior cervical discectomy and fusion.
Dr. Ioppolo continued to follow plaintiff’s progress postoperatively. On March 18 and April 18, 1986, plaintiff appeared to be progressing well, and he reported improvement in his pain. On May 19, 1986, plaintiff complained of stiffness in his neck. Dr. Ioppolo recommended that plaintiff not return to work at that time. On June 23, 1986, plaintiff continued to complain of some pain in his neck, but acknowledged that his postoperative problems had resolved. Dr. Ioppolo gave plaintiff a release to return to work on June 30, 1986, with instructions to return for an examination in two months.
Plaintiff returned to Dr. Ioppolo’s office on August 1, 1986, stating that he had not returned to work. Plaintiff claimed that any activity or strain produced pain in his neck and continued to complain of headaches. Dr. Ioppolo’s examination was normal, but Dr. Ioppolo recommended physical therapy. On September 5, 1986, plaintiff was again examined by Dr. Ioppolo, reporting that the physical therapy produced only temporary relief and that he could not return to work. However, Dr. Ioppolo opined that plaintiff could return to some kind of gainful employment without strenuous activity. Dr. Ioppolo also referred plaintiff to Dr. Thomas P. Perone for a second opinion.
Dr. Perone examined plaintiff on September 11, 1986. Dr. Perone found no objective evidence of any spinal cord or nerve *877 root compression. Dr. Perone opined that plaintiffs complaints of pain were musculo-skeletal in origin. Dr. Perone opined that plaintiff could be employed in at least some type of light work.
Plaintiff returned to Dr. Ioppolo on September 26, 1986. At that time Dr. Ioppolo noted that he could do nothing further for plaintiff and agreed that plaintiff should be able to return to at least some form of light duty. Dr. Ioppolo saw plaintiff again on October 8, 1986. Plaintiffs MRI was normal, though plaintiff still complained of neck pain and headaches. Dr. Ioppolo found no reason for the pain or for plaintiffs inability to work. He recommended that plaintiff return to some form of employment and recommended vocational rehabilitation to find suitable employment.
On January 9, 1987, plaintiff and his mother inquired as to plaintiffs prognosis for recovery. Dr. Ioppolo informed plaintiff that he would not always be pain-free and would have to learn to live with the residual pain. Dr. Ioppolo discharged plaintiff from his care and indicated that plaintiff should be able to return to gainful employment. Dr. Ioppolo again examined plaintiff on February 20, 1987, when plaintiff complained of neck pain. Dr. Ioppolo again found no objective reason for plaintiffs complaints of pain, but prescribed anti-inflammatory medications. Two weeks later, plaintiff reported improvement, but continued to complain of neck pain. Dr. Ioppolo opined that plaintiff “gives in to his neck problems too readily in terms of his activities. I think vocational rehabilitation is suggested in terms of trying to get this gentleman back into the work place.” Dr. Ioppolo last saw plaintiff on June 29, 1987, when plaintiff continued to complain of pain. Dr. Ioppolo again found no objective reason for plaintiff’s complaint, but recommended a DSER (der-matomal sensory evoked response) test, which was normal. Plaintiff did not thereafter return to Dr. Ioppolo.
Dr. Ioppolo opined that plaintiff had a 10-15% disability of the body as a whole due to the surgery. In assessing plaintiffs functional disability, Dr. Ioppolo testified in his deposition testimony as follows:
Q Let me ask you: Functionally, how would a person, Mr. Williams, with his work history, functionally, how would you assess the disability, greater or less than ten to fifteen percent?
A Well, to assess a functional disability, it has to be assessed in relation to what particular function we’re talking about. And, you know, in terms of heavy manual labor, according to what the patient tells me — you know, I have no way to assess it other than the patient’s complaints of pain because the studies have all been normal postoperatively — according to what the patient tells me, he’s not able to do anything strenuous without an exacerbation of his problems. If we were to go on that basis, one would have to say a hundred percent disability for certain types of strenuous activity. Now, I cannot corroborate that in terms of any type of diagnostic testing that I have performed.
Q But I think you indicated earlier, you said you have no reason to doubt his complaints are not genuine.
A I have no reason to disbelieve the patient.
* * # # * *
BY MR. CALDWELL:
Q Doctor, in that letter to Hanover did you indicate that you could not find anything that should keep him, should keep Mr. Williams from performing his occupation, and that he should be able to return to his usual work?
A Yes, sir, I said that in this letter.
Q So any restrictions you may have mentioned in your notes were based solely on Mr. Williams’ complaints as opposed to any objective findings you may have made; is—
A Yes,—
Q —that correct?
*878 A —I said that previously. I have not been able to corroborate, as I said, any reason why the patient is having continued problems with any of the tests, nor would the second opinion that I obtained from Dr. Perone. It’s all based on what he’s telling me.
Q Okay. Dr. Perone’s exact words in his second opinion were that: I can see no reason at this time why he cannot be employed at at least in some type of light work. Is that correct?
A Yes, sir.
Q So Dr. Perone was indicating he could at least go back to light work and possibly types?
A Yes, sir.
Q Was that your feeling also when you referred to light work and less strenuous activities, that being that he should be able to at least do that, and based on your objective testing, he probably should be able to do more?
A I think that’s a fair statement, yes, sir.
Plaintiff’s attorney referred him to Dr. Marvin D. Clifton, a neurosurgeon. Dr. Clifton examined plaintiff on November 12, 1986. The neurological examination was normal, and there was no evidence of any motor, sensory, or deep tendon reflex impairment. Dr. Clifton prescribed a short program of physical therapy to the cervical region and anti-inflammatory medication to relieve plaintiff’s complaints of muscle discomfort. Dr. Clifton again examined plaintiff on December 3, 1986. Dr. Clifton failed to find any evidence suggestive of an ongoing disc disorder and determined that plaintiff's problem was primarily musculo-skeletal. Dr. Clifton also recommended that plaintiff attempt to return to work.
Plaintiff testified that he was a high school graduate and had been employed in several capacities since graduation. Plaintiff was first employed as a porter at Baton Rouge General Hospital for approximately two years. Thereafter, he was employed as a gas attendant at an Exxon service station earning minimum wage. Plaintiff was employed at Exxon for approximately two years. Plaintiff then worked in the automotive center at K-Mart performing tune-ups, brake repairs, and front-end alignments, replacing shock absorbers and tires, and performing other general mechanical work. Plaintiff initially earned minimum wage, but — was earning approximately $4.50 per hour when he terminated his employment. Plaintiff then returned to Exxon as a technician earning $3.65 per hour, plus commissions. When plaintiff was terminated from Exxon two years later, he began working for Kirk’s as a tire-changer, earning $4.00 per hour.
Plaintiff testified that after the accident, he suffered pain in his neck and shoulders and headaches. He was examined by numerous physicians, none of whom could find anything wrong with him. Plaintiff attempted to return to work on two occasions, but was forced to leave work the same day because of the pain. Plaintiff had surgery on March 3, 1986, which fused a disc at C5-C6. Plaintiff did not attempt to return to work after the surgery because he did not think he could work. Plaintiff explained that after the surgery, he suffered muscular pain in his neck and shoulders and occasionally had headaches and could do very little because of the pain.
Plaintiff’s mother, Angerella Williams, testified that plaintiff complained of pain when assisting her with household chores and that plaintiff appeared to be in pain. Debra Ann Wilson, plaintiff’s girl friend, testified that plaintiff complained of pain when they were together and that she saw no improvement in his condition after the surgery. The parties stipulated that the testimony of Rosella T. Williams, plaintiff’s aunt, would be substantially similar to the testimony of plaintiff’s mother and girl friend concerning plaintiff's complaints of pain.
TEMPORARY TOTAL DISABILITY
Plaintiff contends that the trial court erred in not finding that he was temporarily, totally disabled. Plaintiff reasons that he is temporarily, totally disabled because *879 he cannot work due to the residual pain he suffers.
Under Louisiana worker’s compensation law, a plaintiff must prove by a preponderance of the evidence that he is disabled. Jaeckle v. Dresser Industries, Inc., 457 So.2d 646 (La.1984); Sino v. Chalmette General Hospital, Inc., 489 So.2d 311 (La.App. 4th Cir.1986); Jacobs v. Pik-Quick, Inc., 454 So.2d 303 (La.App. 4th Cir.1984). LSA-R.S. 23:1221(1), in effect at all times pertinent hereto, provided for temporary total disability as follows:
For injury producing temporary total disability of an employee to engage in any self-employment or gainful occupation for wages whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, or experience, sixty-six and two-thirds percent of wages during the period of such disability.
In Marcotte v. Gulf Builders, Inc., 525 So.2d 208 (La.App. 1st Cir.1988), writ denied, 530 So.2d 88 (La.1988), this court stated:
The 1983 Workers Compensation Act specifically excluded the odd-lot category from the provisions for permanent total disability. LSA-R.S. 23:1221(2). Temporary total disability as defined in LSA-R.S. 23:1221(1) does not exclude odd-lot employment, sheltered employment or employment while working in pain. The Third Circuit has specifically held that the odd-lot doctrine is applicable in temporary total cases. Thomas v. Elder Pallet & Lumber Sales, Inc., 493 So.2d 1267 (La.App. 3 Cir.1986), writ denied, 497 So.2d 312 (La.1986). The Second Circuit held that the working in pain doctrine is also applicable in temporary total disability cases. Johnson v. Monroe Pulpwood Co., Inc., 505 So.2d 862 (La. App. 2 Cir.1987). We agree with our brethren that these two doctrines as well as the sheltered employee doctrine are all viable in temporary total disability cases. [525 So.2d at 210-211]
Also see Willie v. Balehi Marine, Inc., 525 So.2d 231 (La.App. 1st Cir.1988).
[2] A claimant is not considered disabled solely because he suffers some residual pain and discomfort. In order to be compensable, the pain suffered by a claimant must be substantial or appreciable. Bistes v. Asplundh Tree Expert Company, 499 So.2d 402 (La.App. 4th Cir.1986); Peck v. TG & Y Stores Co., 451 So.2d 1327 (La.App. 1st Cir.1984). Whether a claimant’s pain is substantial enough to be disabling is a question of fact that must be determined according to the circumstances of each individual case. Augustine v. Courtney Construction Company of Alexandria, Inc., 405 So.2d 579 (La.App. 3rd Cir.1981), writ denied, 407 So.2d 735 (La. 1981).
While we recognize that in worker’s compensation cases the law is to be liberally construed in favor of the employee, the plaintiff is required to prove the facts by a preponderance of the evidence and with the same legal certainty as required in any other civil case. Peck v. TG & Y Stores Co., supra; Ellis v. Rapides Parish School Board, 419 So.2d 990 (La.App. 3rd Cir.1982).
The key issue before the trial court was whether plaintiff’s pain was severe enough to be disabling. The inability to return to work because of substantial pain is a question of fact. A trial court’s determination of fact based upon a reasonable evaluation of the credibility of the evidence will not be disturbed unless those findings are clearly wrong. Lanus v. Gulf Wandes Corp., 470 So.2d 492 (La.App. 1st Cir.1985); Field v. Winn Dixie Louisiana, Inc., 427 So.2d 616 (La.App. 5th Cir.1983).
In the instant case, the parties do not dispute the fact that plaintiff suffers some residual pain. Plaintiff had the burden of establishing by a preponderance of the evidence that he was in substantial pain. After hearing all of the evidence presented by the reports of several physicians, the deposition testimony of Dr. Ioppolo, and the live testimony of plaintiff, his mother, and his girl friend, the trial court weighed the ex *880 pert and lay evidence for credibility and found that plaintiff had not met the required burden. The trial court, in his written reasons for judgment, stated:
Dr. Ioppolo released Mr. Williams on June 30, 1986, to resume his employment. Dr. Perone was of the opinion Mr. Williams could seek gainful employment. Dr. Clifton also felt Mr. Williams should return to work. This court finds that Mr. Williams was able to perform self-employment or a gainful occupation by June 30, 1986.
In considering the evidence this court does not find that Mr. Williams is disabled because of a “substantial pain” as provided in La.R.S. 1221(2)(c). From the testimony it is clear that any pain Mr. Williams might have is musculoskeletal in nature and does not constitute substantial pain. A claimant is not disabled solely if he experiences some residual pain and discomfort upon attempting to work. In order for a claimant to be considered disabled due to pain, the pain accompanying routine physical tasks and attempts to return to work must be substantial, serious, intense and/or severe. Lanus v. Gulf Wandes Corp., 470 So.2d 492 (La.App. 1st Cir., 1985).
After carefully reviewing the entire record, we cannot say that the trial judge’s finding is clearly wrong.
REHABILITATION SERVICES
Plaintiff contends that he is entitled to vocational rehabilitation.
LSA-R.S. 23:1226 A provides:
When an employee has suffered an injury covered by this Chapter which precludes the employee from earning wages equal to wages earned prior to the injury, the employee shall be entitled to prompt rehabilitation services. The employer or insurer shall provide such injured employee with appropriate training and education for suitable gainful employment and may utilize programs provided by state and federal agencies for vocational education when conveniently available or may utilize any public or private agency cooperating with such state and federal agencies in the vocational rehabilitation of such injured employee. In the absence of such programs the employer or insurer shall provide vocational rehabilitation with available private agencies.
The purpose of this statute is to educate and increase the job marketability of employees who cannot return to their former positions. Harris v. Rumold, 518 So.2d 9 (La.App. 4th Cir.1987); Sino v. Chalmette General Hospital, Inc., supra.
In the instant case, the medical testimony was unanimous that, at the time defendants stopped paying plaintiff worker’s compensation benefits, plaintiff was not disabled and could return to work. Dr. Ioppolo could find no objective reason for plaintiff's pain and recommended that plaintiff return to, at least, light duty employment. Dr. Perone determined that plaintiff’s complaints were musculoskeletal in origin and that plaintiff could return to light duty, at least. Additionally, Dr. Clifton, who was recommended by plaintiff’s attorney, could find no objective reason for plaintiff’s complaints of pain. Dr. Clifton also advised plaintiff to return to work.
Plaintiff bases his claim for rehabilitation services on the recommendation of Dr. Ioppolo. Dr. Ioppolo testified when he recommended that plaintiff return to his former employment, plaintiff reported that was not possible. Dr. Ioppolo felt that plaintiff could perform work without much stress, which is why he suggested vocational rehabilitation. Dr. Ioppolo’s advice was based upon plaintiff’s subjective complaints of pain; however, Dr. Ioppolo could not find any objective explanation for plaintiff’s complaints.
While the purpose of the statute is to educate and increase the job marketability of employees who cannot return to their former positions, this does not include employees who are able to return to work but refuse to do so. Harris v. Rumold, supra. After reviewing the entire record, we find that plaintiff failed to prove that his injury prevented him from earning wages equal to the wages earned prior to the accident. Therefore, we find that de *881 fendants are under no obligation to provide rehabilitation services.
CONCLUSION
For the above reasons, the judgment of the trial court, denying plaintiff’s claim for worker’s compensation benefits, is affirmed at plaintiff’s costs.
AFFIRMED.