| ¡¡CHE HARDY, Judge.
In this workers’ compensation case, plaintiff appeals a judgment in favor of the defendant/claimant, awarding continuing workers’ compensation benefits, outstanding medical expenses, further medical treatment, and penalties and attorney’s fees. For the following reasons, we reverse.
On August 18, 1997, plaintiff/appellant, K-Mart Corporation (hereafter, K-Mart), filed a “Disputed Claim for Compensation” [1] with the Louisiana Office of Workers’ Compensation, against defendant/ap-pellee, John Bice, seeking to have approval for terminating Mr. Bice’s workers’ compensation benefits. Mr. Bice injured his back while in the course and scope of his employment with K-Mart in June of 1986, and had been on temporary total disability since that time. Mr. Bice filed an answer and reconventional demand, seeking to have his workers’ compensation benefits reinstated, past and future medical treatments paid, and penalties and attorney’s fees awarded for wrongful termination of benefits. The matter proceeded to a trial before the Office of Workers’ Compensation hearing officer on April 20, 1998. On June 24, 1998, the hearing officer rendered judgment, finding that Mr. Bice is entitled to continuing workers’ compensation benefits; ordering K-Mart to pay outstanding medical bills; ordering K-Mart to authorize pain clinic visits, [¡¡“exploratory surgery, preliminary testing, and re-fusion if necessary;” and ordering K-Mart to “pay $2,000.00 in statutory penalties, as well as reasonable attorney’s fees for the arbitrary and capricious manner in which this claim was handled.” K-Mart has suspensively appealed, asserting five assignments of error.
In K-Mart’s first assignment of error, it alleges that the hearing officer should have found that Mr. Bice willfully made false statements or misrepresentations in a September 23, 1997 deposition for purposes of obtaining workers’ compensation benefits, and pursuant to La. R.S. 23:1208, Mr. Bice’s benefits should be terminated and he should be ordered to pay penalties. Mr. Bice’s work-related injury occurred on June 15, 1986, and R.S. 23:1208 has been substantially amended (and broadened) since then. However, “it is the date the false statement or misrepresentation was made that is determinative in deciding which version of these provisions apply.” Resweber v. Haroil Const. Co., 94-2708 (La.9/5/95), 660 So.2d 7, 10, f.n. 1.[2]
La. R.S. 23:1208 provides in pertinent part:
A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.
* * * # * *
D. In addition to the criminal penalties provided for in Subsection C of this Section, any person violating the provisions of this Section may be assessed civil penalties by the workers’ compensation judge of not less than five hundred dollars nor more than five thousand dollars, and may be ordered to make restitution. Restitution may only be ordered for benefits claimed or payments obtained through fraud and only *955 up to the time the employer became aware of the fraudulent conduct.
E. Any employee violating this Section shall, upon determination by workers’ compensation judge, forfeit any right to compensation benefits under this Chapter.
The only requirements for forfeiture of benefits under R.S. 28:1208 are that (1) there is a false statement or representation, (2) it is willfully made, and (3) it is made for the |4purpose of obtaining or defeating any benefit or payment. Reswe-ber, at 12. Upon our review of the entire record before us, while we find compelling evidence that Mr. Bice has made false statements, we hesitate to find the hearing officer was manifestly erroneous in failing to find Mr. Bice in violation of La. R.S. 23:1208. Instead, as will be discussed below, we find that in addition to Mr. Bice’s false statements, there is other evidence in the record which, reviewed as a whole, compels us to find that Mr. Bice is able to return to some form of gainful employment.
In K-Mart’s second and third assignments of error, it asserts that the hearing officer erred in finding Mr. Bice still temporarily totally disabled and entitled to further medical treatment. We agree. Inherent in the term “temporary total disability” is the notion that the disability is temporary in nature, and that the disabled worker will return to some type of gainful employment in the foreseeable future. See Hams v. Rumold, 518 So.2d 9 (La.App. 4 Cir.1987). In the matter before us, the record reveals that Mr. Bice has been on temporary total disability from the date of his accident, June 15, 1986, through the date K-Mart terminated his benefits, July 17, 1997. While the hearing officer’s June 24, 1998 judgment simply stated that Mr. Bice is “entitled to Workers’ Compensation Benefits for his injury of June 1986,” the hearing officer apparently found that Mr. Bice is still temporarily totally disabled, some twelve years after his accident.
Nevertheless, upon review, we find compelling, relevant evidence which shows that Mr. Bice has exaggerated his physical limitations and is able to return to some form of gainful employment. At trial, K-Mart introduced into evidence, without objection, two surveillance videotapes taken of Mr. Bice. In conjunction therewith, K-Mart also introduced into evidence the deposition of Kirk Sorenson, the investigator who recorded the surveillance videotapes and testified about his observations of Mr. Bice’s activities on several occasions over a six week period in April and May of 1997, much of which he videotaped. We have reviewed the videotapes, which show Mr. Bice engaging in various, repeated physical outdoor activities, including yard work, working on his automobile, and carrying objects in excess of thirty pounds.
| ^Shortly after the videotapes were made, Mr. Bice was deposed by counsel for K-Mart, and was asked specifically about his continuing physical limitations. Mr. Bice testified at his deposition that he was very restricted in bending at the waist and “can barely touch my knees” ... “on a good day.” Mr. Bice was also asked if he could squat at all, and replied, “no.” When asked what was the weight of the heaviest object he could lift, Mr. Bice responded, “probably five pounds, not constant.” When asked if he was “able to do any yard work,” Mr. Bice responded, “no.” When asked if he did “any carpentry, woodwork, yard work, work on your car,” Mr. Bice responded, “no.”
A cursory review of the videotapes reveals that Mr. Bice was exaggerating his physical limitations in his deposition testimony, as he repeatedly moved with far less restriction on the videotapes than he claimed he could in his deposition and he repeatedly performed the same physical activities which he testified in his deposition he could not perform. Mr. Bice’s explanation at trial for the discrepancies in his deposition testimony and the activities he actually performed on the videotapes *956 was that he must have misunderstood the deposition questions and/or he was performing the activities in pain, although he had no recollection of being in pain at the time or thereafter.
Further, K-Mart asked Dr. Stephen E. Heim to review the videotapes and give K-Mart an opinion as to Mr. Bice’s physical ability to perform any type of gainful employment. Dr. Heim had previously examined Mr. Bice in connection with his ongoing workers’ compensation claim. Dr. Heim had also reviewed several diagnostic tests performed on Mr. Bice over the course of his disability claim and ordered additional x-rays, an MRI with and without contrast, as well as a right lower extremity EMG/NCV electrodiagnostic study in an effort to determine what was causing Mr. Bice’s ongoing and undiminished complaints of pain. In an April 30, 1997 report, Dr. Heim noted that the recent EMG/NCV study failed “to demonstrate any evidence of radiculopathy or neuropa-thy” and was “a normal study.” Dr. Heim also noted that Mr. Bice’s recent MRI failed “to demonstrate any evidence of a recurrent disc herniation” and showed “no | fievidence of progressive changes at L5-Sl.” Further, recent x-rays revealed that “the prior L5-S1 fusion is indeed intact” with “no evidence of instability at adjacent lumbar levels.” After reviewing all of Mr. Bice’s diagnostic tests 'and re-examining him, Dr. Heim’s impression was “persistent right L5 radicular symptoms, without electrophysiological demonstration of true radiculopathy.”
After reviewing the surveillance videotapes, Dr. Heim issued a June 24, 1997 report, in which he detailed Mr. Bice’s physical activities and noted “a marked discrepancy between the demonstrated functional levels in each of our office visits than that on the videotape.” In one of the videos, Mr. Bice is seen performing yard work. Dr. Heim’s report notes
repetitive reaching forward, bending and twisting activities, both towards and away from his body with this implement [a rake or an edger]. This is all performed with an entirely normal pattern and fluidity of his motion, again without pain mannerisms. There are no apparent functional limitations during this activity.
He subsequently uses a short-handled shovel, bending over approximately 100 degrees at the waist, towards the ground with the shovel, lifting up large heaping shovelfulls of brown material— either possibly compost or dirt itself— placing it into a large garbage can. He is using this repetitive bending, twisting, lifting action without any hesitancy or loss of fluidity of his motion or expressions of discomfort. He appears entirely symptom-free and unimpaired.
He then resumes using the long-handled tool, again without any pain expressions and without apparent functional limitations. He is then able to drag, using one hand, the large garbage can. He continues using the shovel, bending approximately 100 degrees at the waist with repetitive bending, twisting and lifting activities with no hesitancy or evidence of functional impairment or any evidence of pain mannerisms.
Dr. Heim further detailed Mr. Bice squatting, carrying a large armchair up stairs to his porch[3] and various other physical activities over the several days of the videotaped surveillance. Dr. Heim concluded his review of the videotapes by reporting that
the findings between the videotape and my findings, completely falsify the demonstrated lack of motion apparent on our active physical examinations.
Furthermore, the findings on the videotapes substantiate a simultaneous bilateral SLR with reports of bilateral *957 hamstring tightness and discomfort producing a 90 degree lumbosacral junction, though no complaints of low back pain. The videotape speaks directly against the patient having any true mechanical low back pain or functional limitations due to true mechanical low back pain.
|7Pr. Heim concluded his June'24, 1997 report by finding that “the videotape demonstrates a functional level of at least the light-medium physical demand level” for gainful employment for Mr. Bice and felt “that the light-medium physical demand level is a very low representation of what the patient’s probable true functional level would represent.”
It is well settled that the factual findings of a workers’ compensation hearing officer may not be set aside unless those findings are clearly wrong in light of the record reviewed in its entirety. Martin v. Olsten Indus. Services, 98-0463 (La.9/18/98), 718 So.2d 404; citing Alexander v. Pellerin Marble, 93-1698 (La.1/14/94), 630 So.2d 706. In the hearing officer’s June 24, 1998 Reasons for Judgment, the hearing officer found the surveillance videotapes “not persuasive.” Upon our review of the entire record before us, while we find that, standing alone, the videotapes may not be enough to prove Mr. Bice is able to engage in gainful employment of a strenuous physical nature, the videotapes show more than Mr. Bice’s true physical functioning capacity over short periods of time. The videotapes prove that Mr. Bice has engaged in repeatedly exaggerating his physical limitations, both in sworn deposition testimony and in his statements to his doctors.
Generally, a treating physician’s testimony is given greater weight than that of a physician seen for litigation purposes, since a treating physician has the opportunity for repeated examinations and observations of the patient. Sino v. Chalmette General Hospital, 489 So.2d 311 (La. App. 4 Cir.1986). However, in the matter before us, it does not appear from the record that either Dr. Heim or Dr. Ronald Michael, Mr. Bice’s current treating physician, have been able to document any objective evidence of the pain and resulting physical limitations Mr. Bice continues to describe. While Dr. Michael felt that Mr. Bice was still disabled from working at the time of trial, Dr. Michael’s reports introduced at trial by Mr. Bice do not address the surveillance videotapes,[4] as he is apparently unaware that they exist.
IsMoreover, while Dr. Michael may have had the opportunity for more examinations and observations of Mr. Bice than did Dr. Heim, any examination of Mr. Bice is suspect considering the clear disparity in Mr. Bice’s documented statements of his physical limitations and complaints of pain and what was shown on the videotapes. Our review of Dr. Michael’s medical reports shows that Mr. Bice presented on each visit with the same complaints of pain and physical limitations as he described to Dr. Heim and in his deposition testimony. Considering that Dr. Michael did not have the benefit of observing Mr. Bice’s true physical capabilities as shown on the videotapes, we cannot give greater weight to his opinion than that of Dr. Heim. In fact, considering Dr. Heim’s knowledge of Mr. Bice’s true physical functioning capacities and his clear tendency to exaggerate his limitations, we accord greater weight to the opinion of Dr. Heim, and reject Dr. Michael’s opinion regarding Mr. Bice’s work disability as being not fully informed.
After thoroughly reviewing the entire record, we find that the hearing officer was clearly wrong in finding that Mr. Bice is entitled to continuing workers’ compensation benefits, including any unpaid medical bills and any future medical treatments. That portion of the hearing *958 officer’s June 24, 1998 judgment awarding said benefits is therefore reversed.
In K-Mart’s fourth assignment of error, it asserts that the hearing officer erred in finding K-Mart arbitrary and capricious and assessing penalties and attorney’s fees. Since we have found that the hearing officer was clearly wrong in finding Mr. Bice entitled to continuing workers’ compensation benefits, K-Mart cannot be arbitrary and capricious in terminating Mr. Bice’s benefits, and that portion of the hearing officer’s June 24, 1998 judgment is likewise reversed.[5]
Therefore, for the foregoing reasons, the June 24, 1998 judgment of the Office of Workers’ Compensation hearing officer, finding Mr. Bice entitled to continuing workers’ compensation benefits, ordering K-Mart to pay outstanding medical expenses and authorize Rfurther medical testing and treatment, and awarding penalties and attorney’s fees for arbitrary and capricious behavior, is hereby reversed.

REVERSED.

. Form L.D.O.L.-W.C.-1008.

. "The general rule that the governing law in a compensation action is that which was in effect at the time of the alleged injury,” is not applicable to questions involving R.S. 23:1208. Id.

. Mr. Bice testified at trial that the chair weighs "approximately thirty to thirty-five pounds.”

. Neither doctor testified live at the trial or via deposition. Only their medical records were introduced into evidence at trial.

. In K-Mart’s final assignment of error, K-Mart makes an alternative request for a credit against any future supplemental earnings benefits it may have to pay. This assignment is rendered moot by our reversal of the hearing officer's June 24, 1998 judgment.